UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM M. WALL, as Special Administrator of the Estate of Dorothy A. Wall, | ) ) ) 17 C 5372 |
| Plaintiff, | ) ) |
| | ) Judge Gary Feinerman |
| vs. | ) ) |
| DOMNICK CUNNINGHAM & WHALEN, PLLC, | ) ) |
| Defendant. | ) |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

William Wall, as special administrator for the estate of Dorothy Wall, alleges in this diversity suit that the law firm Domnick Cunningham & Whalen, PLLC ("DWC"), which he retained to pursue claims arising from Dorothy's injury and death, committed legal malpractice by failing to adequately investigate and bring those claims before their limitations periods expired. Doc. 2-1. DWC moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the suit. Doc. 9. The motion is denied.

**Background**

On a Rule 12(b)(6) motion, the court must accept the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Wall's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Wall's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Wall as those materials

1

permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

In September 2011, after a report of alleged neglect or abuse to Alternatives for Older Adults, a care management organization, Dorothy was admitted to the Illinois Valley Community Hospital and then discharged to Addus Healthcare, a firm that provides in-home care. Doc. 2-1 at ¶ 9(1). In December 2012, Dorothy was again admitted to Illinois Valley due to "dehydration, abrasions and sores," and neglect again was reported to Alternatives. *Id*. at ¶ 9(2). According to Wall, both Addus and Alternatives breached their duties under Illinois law by failing to report elder abuse and by negligently allowing her to suffer medical injury. *Id*. at ¶ 9(3)-(5), (7).

On April 16, 2014, a family member found Dorothy not breathing at her home. *Id*. at ¶ 9(13). She was admitted to Illinois Valley with urosepsis and several decubitus pressure ulcers. *Ibid*. Dorothy died two days later, and Wall alleges that her death was caused by Addus's breach of its duties under Illinois law. *Id*. at ¶¶ 5, 9(15)-(16).

In July 2014, Wall retained DWC to pursue claims against Addus and Alternatives. *Id*. at ¶¶ 6-7, 9(8). DWC "did no, or very limited, investigation to ascertain liability on the part of [Alternatives] and [Addus]." *Id*. at ¶ 9(9), (23). Had DWC conducted a thorough investigation, it would have uncovered the abuse and neglect suffered by Dorothy in December 2012. *Id*. at ¶ 9(10). The applicable two-year statute of limitations under Illinois law expired in December 2014 for that abuse and neglect, and DWC failed to file suit by December 2014 (or ever) regarding that abuse and neglect. *Id*. at ¶ 9(11)-(12).

2

Had DWC investigated the events of mid-April 2014 that led to Dorothy's death, it would have filed suit against Addus within the two-year limitations period, which expired on April 16, 2016. *Id*. at ¶ 9(17), (21)-(22). Instead of filing suit, DWC terminated its representation of Wall on February 18, 2016. *Id*. at ¶ 9(18), (20). The termination letter did not advise Wall that the limitations period for claims arising from the events of mid-April 2014 would expire on April 16, 2016. *Id*. at p. 21.

According to Wall, DWC's withdrawal at that juncture did not provide him with sufficient time before the limitation period's expiration to retain another attorney who could investigate the events surrounding Dorothy's death and bring any available claims under Illinois law. *Id*. at ¶ 9(19), (23). As Wall elaborates in his opposition brief—as he is permitted to do in opposing a Rule 12(b)(6) motion, *see Phillips*, 714 F.3d at 1020—because DWC "did little if any investigation" and "provided no reports as to [its] progress or reports as [to] the findings of a medical consultant regarding liability, … any attorney replacing [DWC] basically had to start from square one to perform his or her 'reasonable inquiry' as required" by Illinois's analog to Rule 11(b). Doc. 16 at 4. Wall adds that because "[n]egligence claims against nursing homes can take several months to develop and to come to grip with the underlying facts," and because "[j]ust obtaining all necessary medical records can take 2 to 3 months," "59 days is not enough time to have satisfied the 'reasonable inquiry' requirement of" Illinois's analog to Rule 11(b). *Ibid*. As a result, Wall alleges, he "was not able to obtain substitute counsel within the compressed 59 days remaining on the statute of limitations." *Id*. at 5.

## Discussion

Wall alleges that DWC committed legal malpractice by failing to thoroughly investigate the facts and circumstances surrounding Dorothy's inadequate care, which resulted in the two-

year limitations period expiring on two separate occasions: (1) in December 2014, for the neglect that occurred in December 2012; and (2) in April 2016, for the neglect that occurred in April 2014. Doc. 2-1 at ¶ 9(23). DWC's initial brief does not address the first component of Wall's claim. Doc. 10. After Wall's response brief pointed out that omission, Doc. 16 at 6-7, DWC addressed the matter in its reply brief, but arguments raised for the first time in a reply brief are forfeited. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the district court was entitled to find that Volvo waived the issue."). Accordingly, Wall's malpractice claim regarding DWC's allegedly deficient performance as to potential claims against Addus and Alternatives arising from the events of December 2012 survives dismissal.

DWC did not forfeit its challenge to the second component of Wall's claim, so the court will consider that challenge on the merits. "Under Illinois law, in order to prevail on a claim of attorney malpractice, a plaintiff must succeed in proving four elements: (1) an attorney-client relationship giving rise to a duty on the attorney's part; (2) a negligent act or omission by the attorney amounting to a breach of that duty; (3) proximate cause establishing that but for the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Mihailovich v. Laatsch*, 359 F.3d 892, 904 (7th Cir. 2004). DWC focuses on the third element, arguing that because the limitations period on Wall's potential claim against Addus for the alleged April 2014 neglect did not expire until April 16, 2016—two years after Dorothy was discovered not breathing in her home—and because DWC withdrew from its representation of Wall on February 18, 2016, 59 days before the limitations period expired,

DWC could not have caused the loss of Wall's claim. In support, DWC relies on three decisions from the Appellate Court of Illinois—*Land v. Greenwood*, 478 N.E.2d 1203 (Ill. App. 1985), *Cedeno v. Gumbiner*, 806 N.E.2d 1188 (Ill. App. 2004), and *Dolce v. Gamberdino*, 376 N.E.2d 273 (Ill. App. 1978), *abrogated on other grounds by Goran v. Glieberman*, 659 N.E.2d 56 (Ill. App. 1995)—which, DWC argues, establish that an attorney cannot be held liable for malpractice if the case was viable when the attorney-client relationship ended, given that any duty an attorney owes his client terminates upon his discharge.

All three decisions are distinguishable, at least at the pleading stage, where the record is limited to Wall's factual allegations viewed with all reasonable inferences drawn in his favor. In *Land*, the defendant attorney was not liable because the plaintiff's claims were still "viable" when successor counsel assumed responsibility for the case. 478 N.E.2d at 598. In *Cedeno*, even though the defendant attorney submitted a defective filing, he was not liable because, "at the time of [the attorney's] discharge, [the] plaintiff's personal injury case remained actionable," and the only reason the plaintiff's claim failed was the state court's "misapplication of the law." 806 N.E.2d at 1193-94. As the Appellate Court of Illinois later explained in *Lopez v. Clifford Law Offices, P.C.*, 841 N.E.2d 465 (Ill. App. 2005), "the line of reasoning employed in *Land* … and *Cedeno* [thus] invokes the concept of superseding cause which breaks the chain of causation, so that a negligent actor is excused from liability." *Id*. at 474. Taking *Land* as an example, *Lopez* reasoned that although "the original attorney presumably breached his duty to the plaintiff, … the involvement of a successor attorney at the point where harm to the client's cause of action could still be averted extinguished a malpractice action against the original negligent action." *Ibid*. (The same holds for *Dolce*, which involves similar facts to those in *Land*.)

5

In the present case, by contrast, the court cannot at this stage find as a matter of law that a superseding cause renders Wall unable to demonstrate proximate cause. Unlike the situation in *Cedeno*, the loss of Wall's claims against Addus cannot be attributed to a mistaken ruling by the state court; after all, suit against Addus was never filed. And unlike the situation in *Land* and *Dulce*, successor counsel did not take over the matter from DWC. On that very point, Wall alleges that the compressed 59-day time frame following DWC's termination of the representation, together with the nature of his potential claims against Addus, did not allow him sufficient time to find successor counsel. Favorably citing a Texas case involving a 77-day gap between the malpractice defendant's withdrawal from the representation and the expiration of the limitations period, the Appellate Court of Illinois has cautioned that dismissal is not appropriate under circumstances like these:

> [T]here may be circumstances where [an] … attorney could be held to be a proximate cause of plaintiff's damages where his acts or omissions leave doubt about the subsequent viability of plaintiff's claim after his representation ends … . In those cases, it would be for the jury to determine whether the case was in fact reasonably "viable" at the time of discharge. Reasonable minds could differ as to whether the first attorney's actions or omissions were a proximate cause of plaintiff's injury. *See*, *e.g.*, *Villarreal v. Cooper*, 673 S.W.2d 631, 633-34 (Tex. Ct. App. 1984) (where there were only 77 days before statute of limitations ran, question remained whether enough time existed for successor counsel to take proper action).

*Mitchell v. Schain, Fursel & Burney, Ltd.*, 773 N.E.2d 1192, 1194-95 (Ill. App. 2002).

Thus, because factual questions remain regarding the viability of Wall's potential claims against Addus arising from the events of mid-April 2014 after the termination of his attorney-client relationship with DWC, the court cannot dismiss on the pleadings Wall's malpractice claim against DWC regarding those potential claims. *See Lopez*, 841 N.E.2d at 476 ("[S]ince no superseding cause operated so as to defeat the … defendants' liability as a matter of law, proximate cause in the instant case should be decided not as a matter of law, but by a trier of

fact."); *see also Buschmann v. Prof'l Men's Ass'n*, 405 F.2d 659, 663 (7th Cir. 1969) ("[I]t is well settled that it is improper for a court to decide a question of fact on a motion to dismiss for failure to state a claim."); *Pub. Taxi Serv., Inc. v. Barrett*, 357 N.E.2d 1232, 1236 (Ill. App. 1976) ("[P]roximate cause of an injury is ordinarily a question of fact … to be determined by the jury.") (quoting *Casey v. Burns*, 129 N.E.2d 440, 445 (Ill. App. 1955)).

## Conclusion

DWC's motion to dismiss is denied, without prejudice of course to its raising its arguments on a more complete record at summary judgment and/or at trial. DWC shall answer the complaint by December 19, 2017.

November 28, 2017

_____
United States District Judge